UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| STEFANNIE DYSON and SEAN WELLS-EL, | Case No. 25-cv-2296 (LMP/JFD) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR RECUSAL AND GRANTING DEFENDANTS' MOTION TO DISMISS** |
| LUIS BARTOLOMEI, SARAH LINDAHL-PFIEFFER, HENNEPIN COUNTY DISTRICT COURT 4TH DISTRICT, and THE STATE OF MINNESOTA, | |
| Defendants. | |

Stefannie Dyson and Sean Wells-El, Plaintiffs, pro se.

Amanda E. Prutzman, **Minnesota Attorney General's Office, St. Paul, MN**, for Defendants.

Plaintiffs Stefannie Dyson ("Dyson") and Sean Wells-El ("Wells-El") brought this action against Defendants Luis Bartolomei ("Judge Bartolomei"), Sarah Lindahl-Pfieffer ("Lindahl-Pfieffer"), Hennepin County District Court 4th District, and the State of Minnesota, asserting Section 1983 and state-law claims. *See generally* ECF Nos. 1, 1-1. Defendants move to dismiss. ECF No. 5. Plaintiffs oppose Defendants' motion and further seek this Court's recusal from this matter. ECF Nos. 13, 16. For the following reasons, Plaintiffs' recusal motion is denied, and Defendants' motion to dismiss is granted.

1

## BACKGROUND

Judge Bartolomei, a Minnesota state court judge, presided over the criminal case of Rajuan M. Jones ("Rajuan"[1]). *See* ECF No. 1-1 at 3–4. Dyson is Rajuan's mother. *Id.* at 4. Despite not being a licensed attorney, Dyson filed multiple motions into Rajuan's state-court criminal case. *See State v. Jones*, No. 27-CR-25-1454 ("State Court Docket"), Index #124 (Minn. Dist. Ct. May 23, 2025).[2] On May 23, 2025, Judge Bartolomei issued an order (the "May 23 Order") rejecting Dyson's filings and ordering that "[a]ny motions or documents attempting to be filed in this court matter by a non-party will be summarily rejected by court administration. Motions or documents must only be filed by the actual parties in this matter: the Hennepin County Attorney's Office and [Rajuan]," who was representing himself. *Id.* at 3–4.

On May 29, 2025, Wells-El (whose relationship to Dyson and Rajuan is unclear) attempted to file documents into Rajuan's criminal case, and the district court clerk's office rejected those filings in accordance with the May 23 Order. ECF No. 1-1 at 3, 5. Rajuan then filed a petition for a writ of mandamus with the Minnesota Court of Appeals, requesting an order compelling Judge Bartolomei and the Hennepin County District Court "to accept, file, and docket all third-party filings submitted on Defendant's behalf" by

---

[1] Because this Order references several members of the Jones family, to avoid confusion, the Court will use the first names of members of the Jones family. No disrespect is intended in doing so.

[2] The Court may consider public records from the state-court action without converting the motions to dismiss into motions for summary judgment. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Dyson, Wells-El, and "any other 3rd party" authorized by Rajuan.  ECF No. 8-1 at 6.  On June 25, 2025, the Minnesota Court of Appeals denied Rajuan's petition, explaining that Rajuan "failed to provide authority establishing that the district court is obligated to accept filings by a third-party on behalf of a self-represented defendant."  State Court Docket, Index #156 at 2.

On June 2, 2025, Plaintiffs initiated this federal lawsuit against Judge Bartolomei, Lindahl-Pfieffer,[3] Hennepin County District Court 4th District, and the State of Minnesota.  ECF No. 1.  It is not clear from the complaint what claims they assert, against whom, and in what capacity those claims are brought.  As best the Court can tell, Plaintiffs bring: (1) a Section 1983 claim for damages and injunctive relief against Judge Bartolomei and Lindahl-Pfeiffer, in their individual and official capacities, ECF No. 1-1 at 10; (2) a *Monell* claim against Hennepin County District Court 4th District, *id.* at 9; (3) a Section 1983 claim against the State of Minnesota, *id.* at 10; and (4) state-law fraud and negligence claims against all Defendants, *id.* at 11, 15.  At base, Plaintiffs allege that Judge Bartolomei's issuance of, and Lindahl-Pfieffer's compliance with, the May 23 Order is unconstitutional and tortious.  *See generally* ECF Nos. 1, 1-1.  In addition to damages, Plaintiffs seek an

---

[3]   Plaintiffs allege that Lindahl-Pfieffer is the Court Administrator of Hennepin County District Court (which is located within Minnesota's Fourth Judicial District).  ECF No. 1-1 at 3.  Defendants offer evidence that Lindahl-Pfeiffer is actually the Court Administrator for Minnesota's Tenth Judicial District, which does not include the Hennepin County District Court.  ECF No. 7 at 19.  For purposes of deciding this motion, the Court construes the complaint to name the proper Court Administrator of Hennepin County District Court and accepts as true Plaintiffs' allegation that Lindahl-Pfieffer is the Court Administrator of Hennepin County District Court.  *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024) (explaining that courts must liberally construe pro se filings).

3

injunction that would vacate the May 23 Order, direct Lindahl-Pfieffer to accept Plaintiffs' filings, direct Judge Bartolomei to consider Plaintiffs' filings, and reverse Rajuan's criminal sentence. ECF No. 1-1 at 12–13.

On August 25, 2025, Plaintiffs filed a motion requesting this Court to recuse itself from this matter because this Court previously dismissed a separate, unrelated lawsuit brought by one of Dyson's other children, Mark Rozell Jones ("Mark"). ECF No. 13 at 1; *see generally Jones v. Hennepin Cnty. Fourth Jud. Dist. Ct.*, No. 25-cv-125 (LMP/ECW), 2025 WL 1088162 (D. Minn. Mar. 20, 2025), *aff'd,* 2025 WL 2304785 (8th Cir. May 28, 2025).

## ANALYSIS

### I. Plaintiffs' Motion for Recusal

A federal judge must recuse from a matter if the judge's "impartiality might reasonably be questioned" or if the judge has a "personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). Judges are presumed to be impartial and, accordingly, parties seeking recusal bear "the substantial burden of proving otherwise." *United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008) (citation omitted). "[U]nsupported, irrational, or highly tenuous speculation" does not provide a reason to recuse. *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 601 F. Supp. 2d 1120, 1125–26 (D. Minn. 2009) (citation omitted). Nor does mere disagreement with a judge's past rulings provide a sufficient reason for that judge to recuse. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

4

At base, Plaintiffs' recusal motion is based on Dyson's disagreement with this Court's decision to dismiss Mark's lawsuit. ECF No. 13 at 1. That is an insufficient reason to seek recusal. *See Liteky*, 510 U.S. at 555. Moreover, Plaintiffs' lawsuit (which revolves around Rajuan's criminal case) has nothing to do with Mark's lawsuit (which revolved around Mark's child custody dispute), so this Court's involvement with Mark's lawsuit provides no prior impressions of this case. *Compare* ECF No. 1, *with Jones*, 2025 WL 1088162, at *1. And although Plaintiffs assert that by dismissing Mark's lawsuit this Court "engaged in conduct constituting a systematic deprivation of access to the courts, including dismissing claims against Minnesota state judicial defendants with prejudice under procedurally improper grounds," ECF No. 13 at 1, these are the sort of "unsupported, irrational, or highly tenuous speculation[s]" that do not warrant recusal, *In re Medtronic*, 601 F. Supp. 2d at 1125–26.

Plaintiffs also seek the recusal of United States Magistrate Judge John F. Docherty. ECF No. 13 at 1. Although the basis for seeking Magistrate Judge Docherty's recusal is unclear from Plaintiffs' motion, it appears Plaintiffs seek his recusal because they did not consent "to Magistrate Judge jurisdiction under Fed. R. Civ. P. 73(b)," and therefore object to Magistrate Judge Docherty "ruling on or making recommendations concerning dispositive motions in this case" or to "determin[ing] Defendants' Motion to Dismiss without a hearing." *Id.* at 1–2. As the District Judge in this case, this Court is deciding Defendants' dispositive motion, so Magistrate Judge Docherty's recusal is unnecessary. Plaintiffs' recusal motion is therefore denied in its entirety.

## II. Defendants' Motion To Dismiss

Defendants seek dismissal under both Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over this case, and Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs fail to state a claim upon which relief may be granted. ECF No. 5. As discussed below, the Court finds that Plaintiffs' claims against the State of Minnesota are barred by sovereign immunity and that Plaintiffs otherwise fail to state a viable claim for relief against the remaining Defendants.

### a. Jurisdictional Challenge

A defendant may raise either a "facial" or a "factual" challenge to a court's subject-matter jurisdiction under Rule 12(b)(1). *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 861 (D. Minn. 2021). On a facial challenge "the court restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). By contrast, "[i]n a factual attack, the court considers matters outside the pleadings." *Id.* Because Defendants rely on the pleadings and public records—which may be considered on a facial challenge, *see Degnan v. Sebelius*, 959 F. Supp. 2d 1190, 1193 (D. Minn. 2013)—the Court construes Defendants' arguments under Rule 12(b)(1) to raise a facial attack to the Court's subject-matter jurisdiction. Accordingly, the Court will limit its review to the pleadings and relevant public records and will "defer to the non-moving party's factual allegations." *Qwest Commc'ns Co. v. Free Conferencing Corp.*, 990 F. Supp. 2d 953, 965 (D. Minn. 2014).

Defendants offer several jurisdictional arguments for dismissal, including the *Rooker-Feldman* doctrine and sovereign immunity. ECF No. 7 at 6–10, 15–16. Because subject-matter jurisdiction must be decided before proceeding to the merits of an action, *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001), the Court will address those arguments first.[4]

i. *Rooker-Feldman* Does Not Bar Plaintiffs' Suit

A federal court lacks subject-matter jurisdiction over a case if that case is barred by the *Rooker-Feldman* doctrine.[5] *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005). That is because "only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment." *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 754 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

---

[4] Defendants describe *Younger* abstention as "jurisdictionally foreclos[ing]" Plaintiffs' claims. ECF No. 7 at 7. That is not entirely correct. "When *Younger* abstention applies, the district court is required not to *exercise* its jurisdiction. But that does not mean the court *lacks* jurisdiction . . . ." *Wassef v. Tibben*, 68 F.4th 1083, 1086 n.3 (8th Cir. 2023). Because *Younger* abstention is not a jurisdictional doctrine (in that it must be decided to determine whether the Court can proceed to the merits), the Court need not address *Younger* abstention at the outset of this case. And because other bases for dismissal of Plaintiffs' claims exist, the Court need not address *Younger* abstention at all.

[5] The doctrine is named for the two U.S. Supreme Court cases articulating its contours: *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

7

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

Although this case smacks of *Rooker-Feldman*—in that Plaintiffs essentially seek federal court review and rejection of a state-court decision—the doctrine does not apply here because Plaintiffs were not parties to the state-court action underlying their complaint. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("*Rooker–Feldman* [is] inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding."). Rather, only Rajuan was party to the state-court criminal proceedings. *See generally* State Court Docket. Accordingly, *Rooker-Feldman* may not be used to bar Plaintiffs' claims.

### ii. Sovereign Immunity Bars Plaintiffs' Suit Against the State of Minnesota

The Eleventh Amendment bars private parties, such as Plaintiffs, from suing a state in federal court. U.S. Const. amend. XI. That is true regardless of whether the plaintiff seeks monetary damages or equitable relief. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). Accordingly, the State of Minnesota is immune from suit under the Eleventh Amendment. *See Grover-Tsimi v. Minnesota*, 449 F. App'x 529, 530–31 (8th Cir. 2011). Eleventh Amendment sovereign immunity therefore bars Plaintiffs' claims against the State of Minnesota unless they demonstrate that one of two exceptions apply: (1) that Congress "authorize[d] such a suit"; or (2) that the State of Minnesota has "waive[d] its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

As for Plaintiffs' Section 1983 claims, Congress has not abrogated Eleventh Amendment immunity for Section 1983 actions, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1988), and the State of Minnesota has not consented to be sued under Section 1983, *see Hussein v. Minnesota*, No. 19-cv-1913 (DSD/TNL), 2019 WL 5693733, at *2 (D. Minn. Nov. 4, 2019). And because the Eleventh Amendment "applies with equal force to pendant state law claims," Plaintiffs' state-law claims—which are based on the same conduct that underlies Plaintiffs' Section 1983 claims—are also barred by sovereign immunity. *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000). All claims against the State of Minnesota are therefore dismissed.[6]

### b.    Merits Issues

Having resolved the threshold jurisdictional issues posed by Defendants, the Court turns to the merits of Plaintiffs' complaint. In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[6]    Plaintiffs did not contest Defendants' argument that Plaintiffs' claims against the State of Minnesota are barred by sovereign immunity. *See* ECF No. 16. Plaintiffs have therefore forfeited those claims. *See Brown v. Ludeman*, No. 11-2859 (JRT/ECW), 2023 WL 5703194, at *3 (D. Minn. Sept. 5, 2023) (failure to oppose specific arguments in a motion to dismiss forfeits those issues).

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiffs are proceeding pro se, the Court is mindful to liberally construe their filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

### i. Plaintiffs Do Not Plausibly Allege a *Monell* Claim

Liberally construing Plaintiffs' complaint, the Court understands Plaintiffs' Section 1983 claim against Hennepin County District Court 4th District, and the Section 1983 claims for damages against Judge Bartolomei and Lindahl-Pfeiffer in their official capacities,[7] to raise a *Monell* claim. *See* ECF No. 1-1 at 9–11. Under *Monell*, a municipality cannot be held liable for a constitutional violation under Section 1983 solely because it employs a tortfeasor. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Rather, liability for a constitutional violation will attach to a municipality only if the violation resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise an official or employee. *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). Plaintiffs appear to rely on each of these theories of *Monell* liability, but each falls short as a matter of law.

First, Plaintiffs allege that Hennepin County "maintained policies . . . that permitted unlawful censorship and obstruction of legal filings." ECF No. 1-1 at 9. However,

---

[7] A Section 1983 claim for damages against a municipal officer in their official capacity is really "an action directly against the public entity itself." *See Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1003 (D. Minn. 2016) (quoting *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994)). Accordingly, such claims are analyzed under the *Monell* framework. *See Lopez-Buric v. Notch*, 168 F. Supp. 2d 1046, 1049 (D. Minn. 2001).

Plaintiffs do not actually identify any policies that purportedly "permitted unlawful censorship and obstruction of legal filings." To the extent that Plaintiffs assert that the May 23 Order was an "official municipal policy," that cannot be so because Judge Bartolomei, the municipal employee who issued the May 23 Order, did not possess "final authority to establish municipal policy with respect to the action ordered." *Hamilton v. City of Hayti*, 948 F.3d 921, 929 (8th Cir. 2020) (citation omitted) (holding that a judicial order did not establish an official policy because the order could be reversed by higher state courts, meaning the issuing judge was not the policymaker with final authority).

Second, Plaintiffs allege that Hennepin County engaged in a "pattern and practice" of "denying access to legal materials," "seizing legal documents," and "permit[ting] unlawful censorship and obstruction of legal filings." ECF No. 1-1 at 9. "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law." *Russell v. Hennepin County*, 420 F.3d 841, 849 (8th Cir. 2005) (citation modified). That custom must implicate "a widespread and persistent pattern of unconstitutional misconduct . . . policymakers were either deliberately indifferent to or tacitly authorized." *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 363 (8th Cir. 2023) (citation omitted). As such, "[a]n unconstitutional custom or usage cannot arise from a single act." *Bolderson*, 840 F.3d at 986. But here, Plaintiffs only describe a single act of allegedly unconstitutional misconduct: the May 23 Order. ECF No. 1-1 at 4–5. Plaintiffs describe no other instances of judges in Hennepin County prohibiting third parties from submitting legal filings. That is insufficient to plausibly allege an "unofficial custom" under *Monell*. *See Bolderson*, 840 F.3d at 986.

11

Finally, Plaintiffs allege that Hennepin County "[f]ailed to provide adequate training and supervision regarding constitutional obligations." ECF No. 1-1 at 9. But this allegation is a bare legal conclusion which the Court is not bound to accept as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678. Without any actual factual allegations for Plaintiffs' failure-to-train theory of liability, that theory falls short, too. Plaintiffs therefore have not plausibly alleged a *Monell* claim.

### ii. Judicial Immunity Bars the Section 1983 Claim for Damages Against Judge Bartolomei in His Individual Capacity

Judicial immunity is "an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). The doctrine is grounded in the principle that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 10 (citation omitted). Accordingly, a "judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge is not immune for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and second, a judge is not immune for "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Just. Network Inc. v. Craighead County*, 931 F.3d 753, 760 (8th Cir. 2019) (citing *Mireles*, 502 U.S. at 11–12).

Neither of the exceptions to judicial immunity applies here. First, Plaintiffs essentially challenge Judge Bartolomei's issuance of the May 23 Order. ECF No. 1-1 at 7–8. But issuing an order is "normally performed by a judge" and is, therefore, a judicial

action. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *Cassell v. County of Ramsey*, No. 15-cv-2598 (PJS/JJK), 2015 WL 9590802, at *5 (D. Minn. Dec. 11, 2015) ("Issuing an order is a function normally performed by a judge and is a function that the parties deal with the judge in the judge's judicial capacity."), *report and recommendation adopted*, 2015 WL 9581806 (D. Minn. Dec. 30, 2015).

Plaintiffs also fail to show that Judge Bartolomei acted "in the complete absence of all jurisdiction." *Just. Network*, 931 F.3d at 760 (citation omitted). "[A]n action—taken in the very aid of the judge's jurisdiction over a matter before him—cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13. The Court is to "construe broadly the scope of the judge's jurisdiction." *Just. Network*, 931 F.3d at 762 (citation omitted) (internal quotation marks omitted).

The conduct that Plaintiffs challenge—Judge Bartolomei's issuance of the May 23 Order—was made in the course of a criminal proceeding that was initiated in Hennepin County District Court. ECF No. 1-1 at 4. Minnesota law vests the state district court with original jurisdiction over criminal proceedings, Minn. Stat. § 484.01, subd. 1(2), so Judge Bartolomei's order in Rajuan's criminal proceedings was issued "in the very aid of the judge's jurisdiction over a matter before him," *Mireles*, 502 U.S. at 13.

Plaintiffs assert that the May 23 Order was an administrative act, which is not subject to judicial immunity. *See* ECF No. 16 at 5. Plaintiffs rely on *Forrester v. White*, 484 U.S. 219 (1988), for their argument, but that case is far afield of this one. In *Forrester*, the Supreme Court determined that a state-court judge did not enjoy judicial immunity when firing a subordinate court employee. *Id.* at 229. But unlike the "personnel decisions

made by judges" that the Supreme Court addressed in *Forrester*, *id.*, this case involves Judge Bartolomei's core judicial act of "resolving disputes between parties who have invoked the jurisdiction of a court," *Rockett ex rel. K.R. v. Eighmy*, 71 F.4th 665, 671 (8th Cir. 2023) (citation omitted). Indeed, the May 23 Order rejected several motions filed by Dyson and resolved the dispute over who was entitled to file motions in Rajuan's criminal case. *See* State Court Docket, Index #124 at 3–4. Because issuing such an order is a core judicial function, *see Cassell*, 2015 WL 9590802, at *5, Judge Bartolomei is entitled to judicial immunity. Consequently, the Section 1983 claim for damages against Judge Bartolomei in his individual capacity is dismissed.

### iii. Quasi-Judicial Immunity Bars the Section 1983 Claim for Damages Against Lindahl-Pfieffer in Her Individual Capacity

Through the doctrine of absolute quasi-judicial immunity, courts have extended the protections of judicial immunity to individuals other than judges under some limited circumstances. *See Hamilton*, 948 F.3d at 928. Relevant here, "[f]or court clerks, absolute immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules." *Id.*; *see Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Clerks of court have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction." (citation modified)).

That principle requires dismissal of the Section 1983 claim for damages against Lindahl-Pfeiffer in her individual capacity. The complaint alleges that the Clerk's Office of the Hennepin County District Court "turned away" Wells-El when he attempted to file

documents into Rajuan's criminal case on May 29, 2025. ECF No. 1-1 at 5. But the May 23 Order directed the Clerk's Office to reject "[a]ny motions or documents attempting to be filed in this court matter by a non-party." State Court Docket, Index #124 at 3. Lindahl-Pfieffer was therefore "specifically required" to reject Plaintiffs' filings in Rajuan's criminal case "at a judge's direction," which entitles her to quasi-judicial immunity. *Rogers*, 841 F.2d at 856 (citation omitted).

Plaintiffs respond that Lindahl-Pfeiffer's rejection of Wells-El's filings was criminal misconduct. ECF No. 16 at 5. Not only is that assertion entirely speculative, but it is also not alleged in the complaint, so the Court need not consider it now. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). Relying on *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), Plaintiffs also assert that Lindahl-Pfeiffer's actions were ministerial and not subject to quasi-judicial immunity. ECF No. 16 at 6. But *Antoine*'s holding was limited to court reporters, not court clerks. *See* 508 U.S. at 436. As a court clerk, Lindahl-Pfieffer is entitled to quasi-judicial immunity under binding Eighth Circuit precedent if her actions were "taken at the direction of a judge." *Hamilton*, 948 F.3d at 928. That is what happened here, so Lindahl-Pfieffer

15

is entitled to quasi-judicial immunity with respect to the Section 1983 claim for damages against her in her individual capacity.[8]

### iv. Plaintiffs' Section 1983 Claims for Injunctive Relief Against Judge Bartolomei and Lindahl-Pfieffer Fail

To the extent that Plaintiffs seek injunctive relief under Section 1983 against Judge Bartolomei and Lindahl-Pfieffer, *see* ECF No. 1-1 at 12–13, those claims fail regardless of whether those claims are individual or official-capacity claims. As for Plaintiffs' Section 1983 claims for injunctive relief in Judge Bartolomei's and Lindahl-Pfeiffer's individual capacities, those claims fail because Judge Bartolomei and Lindahl-Pfeiffer "do not have authority in their *individual* capacities" to accept Plaintiffs' filings, hold hearings on and consider those filings, or reverse Rajuan's criminal sentence. *Hummel v. Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 593, 593 n.5 (D. Minn. 2020) (collecting cases demonstrating that Section 1983 plaintiffs may not sue state officials in their individual capacity for injunctive relief precisely because those individuals do not have authority to act in their individual capacities).

As for Plaintiffs' Section 1983 claim for injunctive relief against Judge Bartolomei in his official capacity, because Judge Bartolomei is entitled to judicial immunity (as discussed above), that claim must be dismissed. *See Just. Network*, 931 F.3d at 763

---

[8] Quasi-judicial immunity is not available for a court clerk sued for injunctive relief in their official capacity. *See VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007). Plaintiffs' claims for prospective injunctive relief against Lindahl-Pfieffer are dismissed on different grounds, as discussed below.

("[J]udicial immunity typically bars claims for prospective injunctive relief against judicial officials acting in their judicial capacity.").

As for Plaintiffs' Section 1983 claim for injunctive relief against Lindahl-Pfeiffer in her official capacity, the *Ex parte Young* doctrine permits a Section 1983 plaintiff to bring a claim for injunctive relief against a state officer without infringing on the state's sovereign immunity. *See Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001). However, the Supreme Court has recognized that *Ex parte Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Women's Health v. Jackson*, 595 U.S. 30, 39 (2021). As *Ex parte Young* itself put it, "an injunction against a state court" or its "machinery . . . would be a violation of the whole scheme of our Government." 209 U.S. 123, 163 (1908). Plaintiffs offer no reason why this general rule does not apply to Lindahl-Pfieffer, a state court clerk. Accordingly, Plaintiffs may not seek injunctive relief against Lindahl-Pfieffer under *Ex parte Young*.[9]

### v. The Court Declines To Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims

What remains are various state-law claims against Hennepin County District Court 4th District, Judge Bartolomei, and Lindahl-Pfieffer.[10] A district court "may decline to

---

[9] Because all Section 1983 claims have been dismissed, Plaintiffs' Section 1983 conspiracy claim must also be dismissed. *See White v. McKinley*, 519 F.3d 806, 514 (8th Cir. 2008) (explaining that a plaintiff is "required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim").

[10] Plaintiffs' complaint refers to several other federal laws, but Plaintiffs do not include any factual allegations relevant to Defendants' purported liability under those laws. *See* ECF No. 1-1 at 2, 6, 15 (referring to the Tucker Act, the Administrative Procedures Act,

exercise supplemental jurisdiction" over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court dismisses all federal-law claims well before trial, so the Court dismisses the state-law claims without prejudice, "so that [they] may be considered, if at all, by the courts of Minnesota."[11] *Hervey v. County of Koochiching*, 527 F.3d 711, 726 (8th Cir. 2008).

---

and the Privacy Act). Without any factual allegations to support those claims, those claims must be dismissed. *See Iqbal*, 556 U.S. at 678. Additionally, to the extent that Plaintiffs raise new claims in their opposition brief to Defendants' motion to dismiss (such as a claim under the Equal Protection Clause, which was not alleged in the complaint), the Court declines to consider those late-raised claims. *See Morgan Distrib. Co.*, 868 F.2d at 995.

[11]   After briefing on Defendants' Motion to Dismiss and Plaintiffs' Motion for Recusal had closed, Plaintiffs filed what is essentially a sur-reply to Defendants' reply brief in support of their motion to dismiss. ECF No. 20. The Court declines to consider Plaintiffs' untimely sur-reply as it "is neither authorized by the Local Rules of this District nor by the Court's order." *Hazley v. Roy*, 378 F. Supp. 3d 751, 760 (D. Minn. 2019). To the extent that Plaintiffs argue that the Court is violating their due process rights by declining to hold a hearing on the pending motions, that argument is incorrect. *See* D. Minn. L.R. 7.1(c)(5)(A) (explaining that a district court may decide a dispositive motion without a hearing). Plaintiffs have been noticed of Defendants' motion to dismiss, and they have had an opportunity to respond to that motion through their timely written filings.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Recusal (ECF No. 13) is **DENIED**;

2. Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED**; and

3. The complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 3, 2025                              *s/Laura M. Provinzino*
                                                    Laura M. Provinzino
                                                    United States District Judge